# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Abigail L. Memis, ) | Civil Action No.: 2:11-01084-CWH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| City of North Charleston, ) | |
| ) | |
| Defendant. ) | |

The matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Bruce Howe Hendricks recommending that the City of North Charleston's ("the defendant's") motion for summary judgment be granted with respect to Abigail L. Memis's ("the plaintiff's") claims of discriminatory failure to train, discriminatory discipline, and discriminatory discharge, but denied with respect to the plaintiff's claims of hostile work environment and retaliation. (ECF No. 42). For the reasons set forth below, the Court grants the defendant's motion for summary judgment with respect to the plaintiff's claims of discriminatory failure to train, discriminatory discipline, discriminatory discharge, and retaliation. The Court denies the defendant's motion for summary judgment with respect to the plaintiff's claim of hostile work environment.

## Background

On May 5, 2011, the plaintiff initiated this action against the defendant, alleging that during the time she was employed by the defendant as a firefighter, she was subjected to a hostile work environment and discriminatory treatment on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). The plaintiff also pled a claim for retaliation. In accordance with 28 U.S.C. § 636(b) and Local Civil

Rule 73.02(B)(2)(g), D.S.C., this matter was referred to a United States Magistrate Judge for pre-trial proceedings and an R&R.

On June 4, 2012, the defendant filed a motion for summary judgment. (ECF No. 30). On July 5, 2012, the plaintiff filed a response in opposition thereto, and on July 24, 2012, the defendant filed a reply. On January 16, 2013, the magistrate judge issued an R&R which thoroughly analyzed the issues and the applicable law. (ECF No. 42). The R&R recommended that the defendant's motion for summary judgment be granted with respect to the plaintiff's claims of discriminatory failure to train, discriminatory discipline, and discriminatory discharge, but denied with respect to the plaintiff's claims of hostile work environment and retaliation. On February 4, 2013, the defendant filed objections to the R&R. (ECF No. 44). Shortly thereafter, the plaintiff filed a reply to the defendant's objections, and specifically stated that she did not object to the R&R. (ECF No. 47 at 1). This matter is now before the Court for disposition.

**Facts**

The plaintiff was hired by the defendant as a firefighter on or about February 5, 2007. The plaintiff was stationed at three separate locations over the course of her employment with the defendant. After completing her training, the plaintiff was assigned to Station 5 on or about April 22, 2007. (Memis Dep. 20:2–11, Feb. 14, 2012, ECF No. 37-2). The plaintiff alleges that the sexual harassment and other actions that she believes to have created a hostile work environment at Station 5 began during her first trip to meet her co-workers a few days prior to April 22, 2007. (Id. at 27:10–28:22). Despite the plaintiff's alleged attempt to report the incidents she experienced during her first visit to Station 5 (Id. at 32:20–33:20), the behavior of her co-workers appears to have worsened with time. The defendant's male employees assigned to Station 5 regularly required the plaintiff—the sole female employee assigned to the station—



"to do all the cleaning and things in the station" while her male co-workers took breaks and lounged around the firehouse. (Id. at 46:12–17). The defendant's male employees also referred to the plaintiff as a "bitch" and as "Dimis," which was a nickname the male employees gave her which the plaintiff believed to stand for "dumb ass." (Id. at 47:2–17, 62:19–65:18). The plaintiff took it upon herself to speak with at least two of the defendant's employees, both holding a higher rank in the fire department than the plaintiff; as a result of these conversations, she began keeping a journal to document her co-workers' actions. (Id. at 41:24–44:19). Aware that it would be her word against the word of her male co-workers, the plaintiff carefully worked to record accurate details of each incident that she found bothersome and offensive. (Id. at 68:7–73:10). According to the plaintiff, she "was unmercifully harassed at Station 5 because of her sex." (ECF No. 37, at 12).[1]

The plaintiff remained at Station 5 until she sustained an injury at a fire scene on May 27, 2008. (ECF No. 30-1, at 4–6). Due to her May 2008 injury, the plaintiff was placed on light-duty status and was temporarily assigned to the defendant's fire department headquarters on May 28, 2008, where she remained until July 2, 2008. (Id. at 6–7). While away from her Station 5 co-workers, the plaintiff experienced only one instance of conduct she deemed offensive.[2]

---

[1] The plaintiff alleges that while employed at Station 5, the defendant's male employee(s) also: purposefully soiled both the men's and women's restrooms for the purpose of requiring the plaintiff to re-clean the stalls (Memis Dep., 86:5–18); watched pornographic movies nightly at Station 5 (Id. at 87:15–92:20); used binoculars to watch women outside of the station (Id. at 92:25–93:19); set off firecrackers next to the plaintiff's ears (Id. at 93:25–94:5); and attempted to grab the plaintiff's crotch to determine whether she was a female (Id. at 94:6–12). In addition to the aforementioned allegations, the Court hereby incorporates by reference the specific allegations set forth in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with regard to the actions, conduct, and behavior of her Station 5 co-workers. (See ECF No. 37, at 2–5).

[2] During this time, the plaintiff's only claim of sexual harassment-related activity involved a private security guard at the defendant's offices. (Memis Dep., 169:10–172:23).



On July 3, 2008, the plaintiff returned to her assignment at Station 5. (Id. at 7). During the plaintiff's second stint at Station 5, she complained to her battalion chief, C. W. Forner ("Forner"), about her work conditions at this station and shared with him the aforementioned journal in which the plaintiff had attempted to document various events and conditions brought about by her co-workers. (Id. at 8; see also ECF No. 37, at ¶¶ 19, 20). After the plaintiff shared her journal with Forner, he elected to take the journal inside Station 5 and allegedly allowed the plaintiff's co-workers and supervisors to look at it. (Memis Dep., 75:4–9, 130:23–133:12). No disciplinary action was taken against the plaintiff's male co-workers after Forner received the journal. (Id.).

Shortly after her discussion with Forner, the plaintiff was transferred to Station 6 on or about January 14, 2009, where she remained until June 20, 2009, when she suffered a second injury while at a fire scene. (ECF No. 30-1, at 9). As a result of the plaintiff's June 2009 injury, she was again assigned to the defendant's fire department headquarters to carry out work while on light-duty status. (Id. at 9). While on light-duty status at headquarters from June 20, 2009, until January 26, 2010, the plaintiff became aware that then-Engineer Sam Gadson ("Gadson") was to be transferred to Station 6. (Id. at 9). Upon learning of Gadson's pending transfer, the plaintiff asked then-Battalion Chief Bud Green ("Green") not to send her back to Station 6 once she recovered from her injury. (Id.). Although the plaintiff does not claim that she was subjected to a hostile work environment during her first five months at Station 6 (Memis Dep., 217:20–218:23), the plaintiff feared that Gadson's upcoming assignment to Station 6 would cause the same behavior as she had experienced during her time at Station 5 to resurface. The plaintiff's concerns centered on her allegations that Gadson was directly involved with and contributed to the hostile work environment and sexual harassment the plaintiff experienced



while stationed alongside him during her time at Station 5. (ECF No. 30-1, at 9). The plaintiff claims to have discussed Gadson's reassignment, the conditions she experienced at Station 5, and her desire to be transferred with then-Captain Grant Mishoe ("Mishoe"). (Id. at 10 n.34; see also Memis Dep., 234:19–235:25).

When the plaintiff returned to Station 6 on January 27, 2010, Gadson was situated as the acting captain of her shift. (Memis Dep., 241:20–244:5). From January 27, 2010 through May 2, 2010, the plaintiff claims that two of the defendant's male employees continuously harassed her. The plaintiff asserts that the following actions and events created a hostile work environment during the aforementioned period at Station 6: (1) Gadson and other male employees moved the plaintiff's sleeping quarters from a private room to the community sleeping quarters where the male employees slept (Id. at 246:20–25, 249:24–253:12); (2) at the time she was moved to the firefighters' community sleeping quarters, a male co-worker told her he had placed his "butt" on each of the beds in the room so that she would "smell ass all night long" (Id. at 246:14–19); (3) a male co-worker made repetitive requests to the plaintiff that she restock toilet paper in the restrooms (Id. at 246:20–25); (4) a male co-worker made repeated comments suggesting that sexual activity had occurred in the community sleeping quarters (Id.); (5) Gadson repeatedly threatened to discipline the plaintiff for certain conduct, yet never criticized male employees for conduct similar to the plaintiff's (Id. at 259:6–261:9); (6) male co-workers required the plaintiff to clean all of the toilets and wash everyone's dirty dishes (Id. at 267:17–268:4); and (7) two male co-workers suggested that if the plaintiff had performed sexual favors for her superiors, she might have received her Class E license training sooner (Memis Dep. 416:1–423:1, April 24, 2012, ECF No. 37-4).



On May 3, 2010, the plaintiff and other employees of the defendant took part in a hazardous materials training course.[3] During this time, the defendant's fire department alleges that it received a report from other firefighters attending the training which suggested that the plaintiff was engaging in disruptive and disrespectful behavior during training. (ECF No. 30-1, at 12). In response to this complaint, then-Assistant Fire Chief Kyle Minick ("Minick") visited the training site to speak with the trainees, including the plaintiff. After speaking briefly with the group and individually with the plaintiff, Minick considered the matter resolved. (Id. at 13–14). The defendant's fire department received additional reports complaining of the plaintiff's behavior during the second week of training. The allegations in the second week's reports included claims that the plaintiff fell asleep during class, used her cellphone on multiple occasions, and expressed varying degrees of disrespect to course instructors. (Id. at 14). As the cumulative result of these reports, Minick conducted an investigation with regard to the plaintiff and submitted it to the defendant's fire chief, Gregory Bulanow ("Bulanow"). In light of Minick's report, Bulanow decided the proper course of action was to terminate the plaintiff. (Bulanow Dep. 29:13–15, March 16, 2012, ECF No. 37-9).

After the plaintiff was terminated, she submitted a request to the defendant for a grievance hearing. The plaintiff's hearing was held on June 17, 2010, and the plaintiff addressed both her termination and her hostile work environment claims. (ECF No. 30-1, at 15; see also Memis Dep. 344:13–345:11). The plaintiff's grievance was denied on July 8, 2010. (ECF No. 30-1, at 15). On or about October 11, 2010, the plaintiff filed a Charge of Discrimination with

---

[3] "During the training class, [the plaintiff's] mother was admitted to the ICU. [The plaintiff] contacted Kingery, who was in charge of training for the [f]ire [d]epartment, and Kingery told [the plaintiff] to talk to the instructors about any requests for time off or requests to use her cell phone to check on her mother's status. [The plaintiff] obeyed Kingery and spoke with the instructors about these issues." (ECF No. 37, at 6; see also Memis Dep. 315:5–317:1).



the South Carolina Human Affairs Commission ("SHAC"). (ECF No. 30-17). The plaintiff was issued a right to sue letter by SHAC on April 19, 2011. (ECF 30-18). This suit followed.

**Legal Standards**

The magistrate judge makes only a recommendation to this Court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. Id. at 271. The Court may accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is charged with making a de novo determination of any portions of the magistrate judge's recommendation to which a specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. Mathews, 423 U.S. at 270–71; Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985).

In the instant case, the magistrate judge's reported findings were made in response to the defendant's motion for summary judgment. (See ECF No. 30). Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In short, summary judgment should only be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); see also Fed.



R. Civ. P. 56(c). "In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in her favor." Dowe, 145 F.3d at 656 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

## Law and Analysis

The defendant has raised six specific objections to the R&R. (See ECF 44, at 1–2). Pursuant to 28 U.S.C. § 636(b)(1), the Court will discuss each objection in turn, conducting a de novo determination with respect to the portions of the R&R to which the defendant objects.

### I. The defendant's objections

#### A. The magistrate judge erred in finding that the plaintiff provided sufficient evidence to support a prima facie case of retaliation under Title VII.

"To establish a prima facie case of retaliation under Title VII, a plaintiff is required to prove (1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements." Dowe, 145 F.3d at 656. The defendant argues that the R&R incorrectly concluded that the plaintiff met her burden of establishing that there was, in fact, a causal connection between the first two elements. The Court agrees.

The R&R correctly concluded that proximity in time between an employee's participation in a protected activity and an employer's adverse action against that employee should be considered when evaluating the causation element of a prima facie showing of retaliation. But, as the defendant correctly argues, the Fourth Circuit demands that the proximity in time of the adverse action to the protected activity only be considered if evidence is provided showing that the relevant decisionmaker possessed direct knowledge of the plaintiff's protected activity. Id. at 654 ("A plaintiff cannot establish a prima facie case of retaliation when, as here, the relevant decisionmaker was unaware that the plaintiff had engaged in a protected activity."); Miles v. Dell, Inc., 429 F.3d



480, 492 (4th Cir. 2005) (holding that the plaintiff failed to effectively assert a claim of retaliation by her supervisor, Glaze, where Glaze was unaware of the plaintiff's complaints of discrimination to Glaze's supervisor); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) ("Knowledge of a charge is essential to a retaliation claim.").

"To satisfy the third element, the employer must have taken the adverse employment action <u>because</u> the plaintiff engaged in a protected activity." Dowe, 145 F.3d at 657. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is <u>absolutely necessary</u> to establish the third element of the prima facie case." Id. (emphasis added). In the instant case, the plaintiff has provided no evidence that Bulanow was aware of the plaintiff's prior complaints regarding the conduct of her male co-workers at Stations 5 or 6. Although the plaintiff does claim to have provided letters to Green and Captain Goosen requesting a transfer from Station 6 (Memis Dep. 238:24–239:8, 255:3–256:9, Feb. 14, 2012, ECF No. 37-2), there is no evidence whatsoever that Bulanow, the person who decided to terminate her, received such a letter.

Given the Fourth Circuit's consistent view that the relevant decisionmaker <u>must</u> be aware of the plaintiff's protected activity for a causal connection to be present, the plaintiff's unsupported belief that Goosen, Green, or any other employee of the defendant may have at some point discussed her claims with Bulanow is insufficient. See Goldberg v. B. Green & Co., 836 F.3d 845, 848 (4th Cir. 1988). Although the Court must view all facts in the light most favorable to the plaintiff when reviewing the defendant's motion for summary judgment, the Court cannot view facts in any light when the facts simply do not exist. The R&R incorrectly concluded that the plaintiff provided sufficient evidence of a causal connection between the plaintiff's protected activity and the defendant's adverse action. As a result, the plaintiff has not met her burden of



presenting a prima facie case of retaliation and this Court grants summary judgment to the defendant on the plaintiff's retaliation claim.

### B. The magistrate judge erred in finding that the plaintiff provided sufficient evidence of pretext, in regard to her Title VII retaliation claim, to rebut the defendant's non-discriminatory reasons for terminating her employment.

Under the "pretext" method of proof set forth by the Supreme Court, if an employee establishes a prima facie case for a Title VII retaliation claim, the burden then shifts to the defendant-employer to show a nondiscriminatory reason for terminating the plaintiff's employment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). If the defendant is able to offer nondiscriminatory reasons for its decision, the burden then shifts once more to the plaintiff to establish that the reasons provided by the defendant were not its true reasons, but instead were a pretext for discrimination. See, e.g., Lettieri v. Equant, Inc., 478 F.3d 640, 646–47 (4th Cir. 2007). Because the Court finds that the plaintiff has failed to present a prima facie case of retaliation, a discussion of the level of proof provided by the plaintiff suggesting the defendant's nondiscriminatory reasons were mere pretext is unnecessary. The pretext method provided in McDonnell Douglas is inapplicable where no prima facie case is presented.

### C. The magistrate judge erred in concluding that the plaintiff's Title VII hostile work environment claim, for alleged events prior to December 15, 2009, is saved by the "continuing violation" doctrine.

After a thorough review of the record and the R&R, the Court finds the magistrate judge applied sound legal principles to the facts as they relate to the plaintiff's hostile work environment claim for alleged events prior to December 15, 2009. Furthermore, the Court agrees with and adopts the analysis conducted in the R&R with regard to the application of the continuing violation doctrine in the present case.



**D. The magistrate judge erred in concluding that the plaintiff's Title VII hostile work environment claim, for alleged events occurring on or after December 15, 2009, is sufficient to prove a prima facie case.**

After a thorough review of the record and the R&R, the Court likewise finds the magistrate judge applied sound legal principles to the facts as they relate to the plaintiff's hostile work environment claim for alleged events occurring on or after December 15, 2009. Furthermore, the Court agrees with and adopts the analysis conducted in the R&R which concluded that the plaintiff has provided sufficient proof to establish a prima facie case with respect to her hostile work environment claim.

**E. To the extent the magistrate judge relied upon the plaintiff's affidavit dated April 24, 2012, any reliance was incorrect.**

The defendant's objection to any reliance by the magistrate judge on the plaintiff's April 24, 2012 affidavit is unnecessary. The R&R makes no citation of or reference to the plaintiff's affidavit, but instead relies entirely on the depositions of the parties and the arguments set forth in the parties' respective pleadings. Furthermore, Rule 56 of the Federal Rules of Civil Procedure allows parties to a motion for summary judgment to utilize affidavits to support a contention that a certain fact is "genuinely disputed[.]" Fed. R. Civ. P. 56(c)(1)(A). The plaintiff acted within the bounds of the law in submitting her affidavit. Nonetheless, the magistrate judge did not rely upon the plaintiff's affidavit, thereby making the defendant's objection to such reliance unwarranted.

**F. The magistrate judge erred in relying upon hearsay testimony provided by Jason Hawkins.**

The defendant contends that the magistrate judge improperly relied on the testimony provided by Jason Hawkins ("Hawkins") on at least seven separate occasions. The only references to Hawkins' testimony found within the R&R related solely to the plaintiff's hostile work environment claim. The magistrate judge repeatedly employed Hawkins' testimony to buttress testimony provided by the plaintiff in her own depositions. Upon thorough review of the record and

the R&R, the Court finds that the R&R's denial of the defendant's motion for summary judgment with respect to the plaintiff's hostile work environment claim and the reasoning supporting the denial is sound and would be supported by the Court even in the absence of any reference to Hawkins' testimony. For these reasons, the Court will not reach the issue of the admissibility of each of Hawkins' statements referenced in the R&R.

## Conclusion

This Court has carefully reviewed the R&R. In addition, the Court has thoroughly studied the entire record, the pertinent case law, the objections to the R&R, and the reply thereto. The Court agrees only in part with the conclusions of the magistrate judge, and therefore the R&R (ECF No. 42) is accepted in part and rejected in part.

For the reasons articulated in the R&R, the defendant's motion for summary judgment (ECF No. 30) is granted with respect to the plaintiff's claims of discriminatory failure to train, discriminatory discipline, and discriminatory discharge, but denied with respect to the plaintiff's claims of hostile work environment. In addition, for the reasons set forth in this Order, the Court rejects the R&R with respect to the plaintiff's retaliation claim. The plaintiff failed to provide sufficient evidence to support a prima facie case of retaliation under Title VII, therefore the defendant's motion for summary judgment is granted with respect to the plaintiff's retaliation claim.

**AND IT IS SO ORDERED.**

C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE

September 30, 2013
Charleston, South Carolina